Cecil P. Stewart and Dorothy K. Stewart v. Commissioner.
Stewart v. Commissioner
Docket No. 4338.
United States Tax Court
1946 Tax Ct. Memo LEXIS 228; 5 T.C.M. (CCH) 229; T.C.M. (RIA) 46077; March 29, 1946
*228 Albert A. Jones, Esq., National Press Bldg., Washington, D.C., for the petitioners. Bernard J. Long, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined a deficiency of $12,337.88 in income tax for the calendar year 1940. Petitioners claim an overpayment of $29,395.45. The issues are: (a) the cost basis to petitioner, Cecil P. Stewart, of certain stock sold by him in the taxable year; (b) whether a loss sustained by him on the sale of stock in a co-operative apartment corporation was incurred in trade or business or a transaction entered into for profit; and (c) whether he is entitled to a deduction of $14,617.14 for traveling and entertainment expenses. A fourth issue, respecting the disallowance by respondent of deductions of $150 and $6 to the Bayville Fire Department and Police Memorial Fund, respectively, appears to have been abandoned by petitioners. Findings of Fact The petitioners are husband and wife and filed a joint return for the calendar year 1940 with the collector of internal revenue for the second district of New York. Hereinafter Cecil P. Stewart will be referred to as the petitioner. *229 Petitioner is president of Frank B. Hall & Co., Inc., brokers and average adjusters, of 67 Wall Street, New York City, and has acted in that capacity since its organization in 1912. The business of Frank B. Hall & Co., Inc., prior to the date of its organization, was conducted as a copartnership. Upon its organization the petitioner acquired the interests of the other partners and transferred the business to the newly organized corporation for its entire issue of capital stock, consisting of 1,000 shares. The cost basis of these 1,000 shares of the stock of Frank B. Hall & Co., Inc., to petitioner was $427,500, or $427.50 per share. Several years subsequent to the organization of Frank B. Hall & Co., Inc., the petitioner transferred 370 shares of his 1,000 shares to certain employees of that company, on the dates, and to individuals, and in the number of shares, as follows: No. of
Date
Individual
Shares
9-30-18
Arthur Hoyt
50
9-30-18
John R. Van Horne
50
3-6-19
Edward P. Benfield
25
3-6-19
Lawrence R. Beatty
25
3-6-19
Sydney W. Bowser
25
8-15-19
Arthur Hoyt
25
8-15-19
John R. Van Horne
25
5-13-20
Arthur Hoyt
10
8-22-21
John B. Guthrie
25
8-22-21
John R. Warren
25
8-23-21
Arthur Hoyt
15
8-23-21
John R. Van Horne
10
12-8-22
Sydney W. Bowser
60
Total
370
*230 The certificates of stock so reissued to the aforesaid individuals bore the following endorsement: This certificate of stock is issued and accepted by the holder thereof with the understanding and agreement that it cannot be sold, assigned, transferred, or pledged without the previous consent in writing of stockholders holding at least a majority of the stock of the corporation. It is also expressly understood and agreed by the holder hereof that in the event of the death, disability or retirement of the holder that the stock shall be sold to the remaining or surviving stockholders, or as the stockholders holding a majority of the stock may direct, at a price to be fixed by the Board of Directors, but not less than the book value, excluding good will, as shown by the statement of the corporation at the end of the quarter following the death, disability, or retirement of the holder. Petitioner's purpose in the transfer of these 370 shares of stock to the listed employees was to give them an interest in the corporation and to reward them for faithful service. Petitioner felt this to be to the interest of himself and Frank B. Hall & Co., Inc. One Hundred Fifty of the foregoing *231 370 shares were later transferred from certain of the employees to the corporation, on the dates, and for the consideration stated, as follows: Transferred
No. of
Consider-
Date
from
Shares
ation
11-30-21
L. R. Beatty
25
$ 7,500.00
11-31-22 [sic]
J. B. Guthrie
25
6,500.00
5-31-22
Arthur Hoyt
100
30,000.00
The remaining 220 shares of the foregoing 370 shares were acquired by Frank B. Hall & Co., Inc., at the book value of $192.10 per share, on June 30, 1931, from the employees, and for considerations paid as follows: J. R. Van Horne
$16,328.50
S. W. Bowser
16,328.50
E. S. Benfield
4,802.50
J. R. Warren
4,802.50
Total
$42,262.00
The 370 shares thus reacquired by Frank B. Hall & Co., Inc., were held as treasury stock and 70 shares thereof were later transferred to employees of Frank B. Hall & Co., Inc., as follows: December 31, 1939
50 shares to C. F. Stratton
January 2, 1940
10 shares to E. Ottinger
January 2, 1940
10 shares to W. R. Eason
Frank B. Hall & Co., Inc., continued thereafter to hold the remaining 300 shares. The petitioner continued to hold 630 shares of Frank B. Hall & Co., *232 Inc., stock until December 19, 1940, when he sold 270 shares for a consideration of $164,700, or $610 per share. He reported no gain or loss on this sale in his return for the calendar year 1940. Respondent has determined that he realized a long-term capital gain of $24,637.50, using as a cost basis, $427.50 per share. During the year 1929, the petitioner was offered a penthouse apartment in a co-operative apartment building located at 770 Park Avenue, New York City. The acquisition of these apartments was by a purchase of stock in the corporation erecting and owning the building, the ownership of the stock entitling the holder to a 99-year lease upon an apartment, for a rental representing that portion of operating and service charges pertaining to the particular apartment. In that year petitioner purchased 980 shares of the corporate stock of 770 Park Avenue Corporation at a total cost of $98,000. By reason of this purchase he was given a 99-year lease on the penthouse apartment under the terms of which he became obligated to pay a yearly maintenance charge which averaged about 10 per cent of the total cost of the stock purchased. The lease which petitioner signed and under which *233 he occupied the apartment provided, in part, as follows: 6. That the Lessee will not occupy or use the demised premises or permit the same or any parts thereof to be occupied or used (except those portions of the building, if any, which the Lessor may allow, to the extent permitted by law, to be used for doctors' offices) for any purpose other than as a private residence of the Lessee and the family of the Lessee or those other relatives of the Lessee designated in paragraph First, subdivision 4 (a) of Article III hereof, or for the beneficiary or beneficiaries for whom the Lessee holds this lease in trust, if the Lessee be a trustee provided, however, that if the Lessee be a corporation, an association, a co-partnership or an executor under any last will and testament of a decedent, then in any such event the Lessee will not occupy or use the demised premises, or suffer or permit the same to be occupied or used, for any purpose except by a sub-Lessee as a private residence for such sub-Lessee and the family of such sub-Lessee upon compliance with paragraph 13 of this Article I. The petitioner occupied the apartment as a private residence for himself beginning in December 1929. *234 He was then divorced from his wife and she resided in Paris, France, together with their two children. The children visited the petitioner at the apartment. In 1932 or 1933, petitioner remarried and he and his second wife occupied the apartment as a private residence until they separated seven years thereafter, in about 1939 or 1940. Petitioner continued to reside in the apartment, however, until December 1944. Incidental to occupying the apartment as a residence, petitioner entertained business acquaintances, prospective clients and friends, and also conducted various meetings of the officers of Frank B. Hall & Co., Inc., in the apartment. Petitioner owned a summer home at Centre Island, Oyster Bay, Long Island, where it had been his custom for many years to spend the summer months. He had always lived in New York City during the winter and, prior to his acquisition of the apartment at 770 Park Avenue, he lived in a smaller apartment or hotel rooms in New York City. Beginning in December 1938, and continuing through December 1940, Frank B. Hall & Co., Inc., paid the rental assessment charges upon the apartment. On December 31, 1940, petitioner sold his stock in 770 Park Avenue *235 Corporation for 25 cents a share, or a total price of $245. He paid charges for New York State transfer stamps amounting to $78.40, and United States transfer stamps amounting to $39.20. Through the sale of the stock petitioner secured a release from his obligations under the proprietary lease and was given a five-year ordinary lease upon the apartment at the then prevailing maintenance charge, amounting to approximately $700 per month. Petitioner sold his stock in 770 Park Avenue Corporation and secured a release of his obligations under the proprietary lease because he was not sure whether he would remain in New York, as he was getting older and would probably spend more time in Florida in the winter, and at his summer home at Oyster Bay, Long Island, during the summer. On petitioner's income tax return for 1940, he deducted the sum of $48,916.60 as a longterm capital loss resulting from the sale of 980 shares of stock in 770 Park Avenue Corporation. Respondent disallowed this deduction. Petitioner acquired the 980 shares of stock in 770 Park Avenue Corporation in order to secure an apartment for use as a personal residence and did so use it during the period for which he held *236 the stock. The loss sustained by petitioner on the sale of the 980 shares of stock of 770 Park Avenue Corporation was not incurred in trade or business, nor in a transaction entered into for profit. Petitioner, on his 1940 income tax return, deducted $14,617.14, as business expenses paid by him during that year. Of the total of $14,617.14, the amount of $8,987.75, supported by cancelled checks of petitioner, included amounts paid for food and liquor at various clubs and restaurants, annual dues of social and golf clubs, payment for room and board at various clubs, and payments for entertaining personal friends of petitioner and clients of Frank B. Hall & Co., Inc., including theatre tickets, flowers, etc., for clients of Frank B. Hall & Co., Inc., or their wives. Also included in the total of $8,987.75 is one check "to cash" on the National City Bank of New York, in the sum of $2,000, with respect to which petitioner admitted ignorance either of the reason for the withdrawal or the purposes for which expended. Likewise, such total includes a check in the amount of $600, to one R. B. Hamilton, given at a Florida night club and with respect to which he had no recollection. There is *237 also included a check of $143.75 to India House, a trade club, representing the entrance payment and semiannual dues paid by him for his son, James Stewart, a director of Frank B. Hall & Co., Inc., who had just been elected a junior member of India House. The sum of $1,046.87, included in the aforesaid $8,987.75, was paid to The Creek, Inc., and represented monthly accounts for dues, golf, meals and liquor at a golf club near petitioner's summer home on Long Island. The aforesaid $8,987.75 also included a sum of $133.50, paid for expenses of a club car in which petitioner commuted between his summer home on Long Island and New York City. The balance of the total of $14,617.14, claimed as a deduction by petitioner over and above the $8,987.75 supported by cancelled checks, represents an estimate made, personally, by petitioner of additional expenses incurred by him in the same general nature as those represented by his cancelled checks. The petitioner's income during the year 1940, as reported upon his return filed for that year, included dividends in the sum of $27,000 from Frank B. Hall & Co., Inc., and a salary received from that company of $24,999.98. Opinion Petitioner contends *238 that, as a result of his transfer of 370 shares of the stock of Frank B. Hall & Co., Inc., to certain employees of that company by gift, he is entitled to add his cost basis of such shares to his basis for his remaining shares. He argues that this is so because such transfer was made in the interest of the corporation and that the transaction was therefore equivalent to a contribution by him of a portion of his stock to the capital of the corporation. The rule upon which petitioner relies is that upon the surrender by stockholders of a ratable part of their stock to the corporation under circumstances which do not change their proportionate interest in the corporation, the cost of the stock so contributed is to be considered as additional cost to the stockholders of the stock retained. See . This rule has no application here. Petitioner voluntarily made gifts of his stock to various employees. Thereupon his interest in the corporate business was reduced by reason of such gifts and, to the extent of such reduction, the employees obtained interests in the corporate business. Under the present circumstances, there was no contribution *239 by petitioner to the capital of the corporation by reason of his gifts to these employees and the transaction did not augment the cost basis of the shares retained. Respondent is sustained in using the original cost basis of $427.50 per share in computing the gain realized by petitioner upon the subsequent sale, in the taxable year, of 270 shares at $610 per share. Upon consideration of all the facts in connection with petitioner's personal acquisition of a penthouse apartment as a residence at 770 Park Avenue, we find nothing to justify the conclusion that the transaction was entered into for profit, or that the loss occasioned upon his sale of the property was incurred in a trade or business. It appears clear that petitioner acquired the property for use as a personal residence. That he also had in mind the fact that the possession of such a residence would make it possible for him to entertain in a manner which would be a business benefit does not entitle him to treat the transaction as one occurring in his trade or business. The normal and customary result of the earning of a large salary or other income from business is that the living expenses and the manner of life of the *240 recipient necessarily entail added personal expenses. Ordinarily a prominent business executive lives in a way commensurate with his position. This, however, does not justify his treatment of this additional expense as a cost of earning the increase in his income. We are not impressed with the petitioner's argument that his penthouse apartment was acquired and used for the benefit of Frank B. Hall & Co., Inc., in that it was necessary to his services as president of that corporation. If the apartment was acquired as a secondary office and entertainment place for that corporation, it seems strange that the stock representing ownership of the proprietary lease was taken in the name of petitioner and the apartment occupied by him as his home. It is true that the evidence shows that the officers of the company held certain meetings in the apartment for the convenience of the business and that some customers of the company were at times entertained there. But the extent of this use of the premises is not shown. It is noted, however, that the company did, for a period of three years, pay the rental for which petitioner was obligated. This payment may well have discharged any obligation *241 due from the company for such use as had been made of the premises for its purposes. The corporation return for the year 1940, which is in evidence, shows that petitioner was president of the company at an annual salary of $24,999.98. There were eight other officers of the company during that year, four of whom received salaries more than twice that of petitioner. Two others received salaries substantially in excess of petitioner and only two received salaries less in amount. We are not convinced that an expenditure of $98,000 in acquiring a penthouse apartment, coupled with a heavy expenditure of some forty odd thousand dollars for decorations and furnishings and the assumption of an obligation to pay approximately $10,000 additional a year for maintenance and service charges, was necessary in the earning of a salary of $24,000, or was necessary to augment the income of a corporation in which the petitioner was the controlling stockholder. We think this transaction not one entered into for profit. It is our conclusion that the premises were purchased by petitioner personally for use primarily as a residence for himself and family. Its incidental use in entertaining friends or *242 clients of the business does not justify the treatment of the transaction as one entered into for profit. The primary purpose must control. ; . The case of , cited by petitioner, has no application here. The petitioner there purchased stock in a corporation which owned hotels and apartment houses. He was a tenant in one of the apartments owned by the company and leased the same prior to his acquisition of the stock. The court there found that his purchase of the stock was a transaction entered into for profit even though he had a purpose in acquiring it to obtain a voice in the management of the company owning the property he occupied. Here petitioner purchased the stock in question merely as an incident necessary to the acquisition of the proprietary lease and to obtain a residence. The third issue is with respect to petitioner's deduction of $14,617.14 as reasonable and necessary business expenses. Of this total, only $8,987.75 is supported by cancelled checks showing actual expenditures in that amount. The balance, $5,629.39, is an estimate *243 by petitioner from his recollection that he expended such amount in addition to the $8,987.75 for items similar to those covered by his cancelled checks. The inclusion in the claimed deduction of some items patently not allowable evidenced by the cancelled checks throws grave doubt upon the correctness of the evidence supporting the remaining items. This evidence, in turn, is so vague and indefinite that it is difficult to see how any segregation could be made of any portion of the expense as that for business purposes. Thus petitioner has included an item of $2,000 for which he seeks deduction. He supports this with a check drawn to "cash" and admits that he remembers nothing about the withdrawal or its purpose. We certainly cannot assume that this withdrawal was used for business purposes. Another item of $600 is evidenced by a cancelled check given by petitioner to the manager of a club. Petitioner has no recollection of the circumstances in connection therewith. Another item is a payment by petitioner of entrance fees and dues for his son in a trade club or association, and another is a club account at a country club near his summer home. Considering the evidence in the form *244 of cancelled checks submitted in support of the items making up the total of $8,987.75, it seems that petitioner had accounts at various clubs and restaurants and was rendered bills at intervals which he paid by check. Petitioner seeks the deduction of this total as a business expense. It is difficult, if not impossible, to believe that all of these expenditures for club dues, food and drink at those clubs and various restaurants, were made wholly for business purposes of the petitioner and none for his personal satisfaction. In fact, because of the insufficiency of the evidence, we are not convinced that any of them were made for his business purposes. It may well be true, however, that some - if not a substantial amount of them - were made in connection with the business of Frank B. Hall & Co., Inc., and for its account. But, if so, they constitute an obligation of the company to the petitioner, the amount of which, when paid, is deductible by the company as its expense of obtaining business, and not by petitioner. , decided by the Second Circuit Court of Appeals, March 13, 1946. The case of ; *245 affd., , upon which petitioner relies, is, we think, inapposite on the facts. We sustain respondent in his disallowance of the deductions. Decision will be entered for the respondent.